KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Miguel Angel Herrera Alderete, | No. CV 16-01175-PHX-SPL (DMF) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Joseph M. Arpaio, et al., | |
| Defendants. | |

Plaintiff Miguel Angel Herrera Alderete, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  Defendant Cooning moves for summary judgment, and Plaintiff opposes.  (Docs. 83, 90.)

I.    **Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated: excessive force claims against Defendants Gonzalez and Cooning in Count One; a claim against Maricopa County based on a policy, practice, or custom relating to excessive force in Count Two; a state-law negligence claim in Count Three against Defendants Arpaio[1] and Maricopa County for failure to train, supervise, or control Defendants Gonzalez and Cooning; a state-law negligence claim in Count Four against Defendants Arpaio and Maricopa County for negligent hiring of Defendants Gonzalez and Cooning; an assault claim in Count Five against Defendants Gonzalez and Cooning; a battery claim

---

[1] Defendant Penzone was later substituted as to all claims asserted against Defendant Arpaio.  (Doc. 36.)

in Count Six against Defendants Gonzalez and Cooning; and a negligence/gross negligence claim in Count Seven against Defendants Gonzalez and Cooning.  (Doc. 7.)  The Parties later stipulated to the dismissal of the state-law claims in Counts Three through Seven of the Complaint, and those claims were dismissed without prejudice.  (Doc. 27.)  The Parties also stipulated to the dismissal of Defendants Penzone, Gonzalez, and Maricopa County, and those Parties were dismissed from the action with prejudice.  (Doc. 96.)  Defendant Cooning moves for summary judgment as to the remaining excessive force claim asserted against him in Count One.  (Doc. 83.)

## II.    Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

1      At summary judgment, the judge's function is not to weigh the evidence and

2  determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

3  477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw

4  all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited

5  materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

6  **III.  Facts**

7      In April 2015, Plaintiff was a pretrial detainee at the Durango Jail.  (Doc. 84 ¶ 1.)

8  On April 22, 2015, while in the "day room," Detention Officer Sergio Gonzalez observed

9  Plaintiff squeezing oranges into a plastic bag.  (*Id.* ¶ 2.)  The Durango Jail was experiencing

10  problems with inmates making "hooch," jail-made alcohol, as there were gallons of hooch

11  found inside the Durango Jail by the MCSO Special Response Team during searches

12  conducted that day.  (*Id.* ¶ 3.)

13      Plaintiff was sitting at a table with another inmate named Pablo, who spoke both

14  English and Spanish.  (Doc. 91 at 7 ¶ 2.)  Gonzalez asserts that he approached Plaintiff and

15  told him that he was not permitted to squeeze oranges because that is the process to make

16  hooch, and was a violation of the jail's rules and regulations.  (Doc. 84 ¶ 4, 7.)  Plaintiff

17  asserts that Gonzalez did not tell him that oranges were used to make hooch, but that he

18  told Pablo in English that they could not make juice and directed Plaintiff to give him the

19  juice through Pablo.  (Doc. 91 at 7 ¶¶ 4, 12.)  Gonzalez asserts that Plaintiff refused to stop

20  squeezing the oranges and refused to give the bag to Gonzalez.  (Doc. 84 ¶ 8.)  Plaintiff

21  asserts that he told Gonzalez they were making orange juice to have with their burritos.

22  (Doc. 91 at 7 ¶ 6.)  Plaintiff began to drink the juice he had squeezed.  (Doc. 84 ¶ 9.)

23      Gonzalez asserts that because Plaintiff refused to obey Gonzalez's order, Gonzalez

24  tried to retrieve the bag from Plaintiff, but Plaintiff refused to comply with Gonzalez's

25  order and resisted Gonzalez's attempt to handcuff Plaintiff.  (*Id.* ¶¶ 10-14.)  Plaintiff asserts

26  that after Gonzalez asked for the juice, he had "Pablo"[2] tell the officer that Plaintiff had

27

28      [2] Throughout his Statement of Facts, Plaintiff refers to this inmate as Pablo or Pedro;
the Court has used Pablo throughout the Order for consistency.  (*See generally* Doc. 91.)

just returned from court, was hungry, and was going to drink the juice, but he did not pull away from Gonzalez or resist Gonzalez's attempts to put him in handcuffs. (Doc. 91 at 2 ¶¶ 13, 14-16.)  Gonzalez asserts that he gave Plaintiff a direct order to turn around, but Plaintiff did not comply.  (Doc. 84 ¶ 16.)  Gonzalez asserts that this was the sixth direct order Plaintiff refused to comply with, and when Plaintiff refused, Gonzalez grabbed Plaintiff's arm.  (*Id.* ¶¶ 16, 18.)  Plaintiff asserts that Gonzalez did not issue any orders, other than the first request for the juice, and he did not resist Gonzalez's efforts to place him in handcuffs.  (Doc. 91 at 2 ¶ 14.)

Officer Quintero, who was on the scene, states that he heard Gonzalez tell Plaintiff to stop resisting, but Plaintiff continued to resist by pulling away and refusing to give his hands to be handcuffed.  (Doc. 84 ¶ 17.)  Plaintiff denies that he was resisting.  (Doc. 91 at 2 ¶ 14.)  Gonzalez asserts that as he attempted to secure Plaintiff, Plaintiff tried to knee him in the stomach and told Gonzalez, "I will [expletive] you up."  (Doc. 84 ¶¶ 20, 22.)  Plaintiff asserts that he did not knee any of the officers, or attempt to knee them.  (Doc. 91 at 3 ¶ 20.)  Plaintiff then grabbed Gonzalez's right arm.  (Doc. 84 ¶ 23.)  The tower officer saw what was happening and called for officer assistance; several officers responded, including Defendant Officer Cooning, a member of the MCSO Special Response Team, who was in the jail that day doing searches.  (*Id.* ¶¶ 25-26, 29.)  Quintero asserts that other officers were attempting to restrain Plaintiff, but he continued to resist and pull away from them, and Quintero tried to bring Plaintiff's left arm behind his back, but Plaintiff was resisting.  (*Id.* ¶¶ 27-28.)  Plaintiff asserts that he never resisted.  (Doc. 91 at 3 ¶¶ 27-28.)

In response to the call for assistance, Defendant Cooning ran into the jail, saw Plaintiff, who was about 150-200 feet away, resisting an officer on his left arm, resisting an officer on his right arm, and physically pulling away from two officers trying to gain control of him; Defendant Cooning then ran toward them in full sprint.  (Doc. 84 ¶¶ 30-38.)  Defendant Cooning was wearing full tactical gear, including a duty belt, ballistic vest, flashlight, handcuffs, a notepad, a gas mask, pants, boots, a long-sleeve shirt, pepper spray, a pouch with gloves, and a taser.  (*Id.* ¶ 39.)  Defendant Cooning asserts that as he was

running, he collided with Plaintiff as Plaintiff and the other officers, who were struggling, all fell to the ground.  (*Id. ¶¶* 43, 50.)  Defendant Cooning believes that his knee struck Plaintiff as they fell, but does not know where they collided; Cooning denies that he threw a knee strike at Plaintiff or tried to kick him.  (*Id. ¶¶* 43-49.)  Plaintiff asserts that he was already under control and on the floor at the time Defendant Cooning ran and intentionally performed a knee strike to Plaintiff's nose.  (Doc. 91 at 3 ¶¶ 42, 44, 9 ¶ 27.)  Quintero and Officer Parisot, who was also present, believe the collision was an accident.  (Doc. 84 ¶¶ 51-52.)  Cooning also collided with Quintero and struck him in the head above his eyebrow.  (*Id. ¶¶* 55-56.)

In his initial report of the incident, Officer Aviles reported that "SRT Officer Cooning [used] a knee strike to inmate's nose."  (Doc. 91 at 10 ¶ 33.)  In his deposition, Officer Gonzalez described Cooning as performing a knee strike.  (*Id.* at 11 ¶ 34.)  In his initial report after the incident, Cooning did not state that he collided with Plaintiff or performed a knee strike.  (*Id.* at 11 ¶ 35.)

After Plaintiff was on the ground, the officers put him in handcuffs and secured his legs and arms.  (*Id. ¶* 53-54.)  Plaintiff's nose was bleeding, and he was transported to the Maricopa Medical Center, where he was diagnosed with a broken nose.  (*Id. ¶¶* 57, 63.)  It was recommended later that Plaintiff have an open reduction and septoplasty, a surgical repair of his broken nose, but the surgery has not yet been done.  (*Id. ¶¶* 64, 70.)

**IV.   Discussion**

    **A.   Arguments**

Defendant Cooning argues that the collision with Plaintiff was an accident caused by Cooning running to help a fellow officer, and was not excessive force.  (Doc. 83 at 8.)  Cooning further argues that Plaintiff's "self-serving" testimony to the contrary must be disregarded.  (*Id.*)  In Response, Plaintiff argues that there are disputed issues of material fact precluding summary judgment in Cooning's favor, namely whether Cooning intentionally performed a knee strike to Plaintiff's face, as well as whether Plaintiff was resisting at the time Cooning performed the knee strike.  (Doc. 90 at 1-2.)  Plaintiff argues

that his testimony is not self-serving and should not be disregarded, and that his testimony is supported by Officer Gonzalez's deposition testimony and Officer Aviles's account in the Incident Report stating that Cooning performed a knee strike to Plaintiff's nose.  (*Id.* at 4-5.)  Plaintiff asserts that the video of the incident supports his assertion that Cooning was attempting to perform a knee strike and was not simply unable to stop his forward momentum.  (*Id.*)

### B.    Legal Standard

The Fourteenth Amendment's Due Process Clause, and not the Eighth Amendment, applies to the use of excessive force against pretrial detainees.  *Kingsley v. Hendrickson*, ___ U.S.___, 135 S. Ct. 2466, 2473 (2015).  In this context, force is considered excessive if the officers' use of force was "objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their mental state.  *Kingsley*, 135 S. Ct. at 2472-73.

### C.    Analysis

Defendant's entire argument is premised on his version of the incident in question. He insists the Court must disregard Plaintiff's "self-serving" testimony.  Generally, "[t]hat an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact."  *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999).  Here, Plaintiff's testimony that he was on the ground, not resisting, and Cooning intentionally performed a knee strike to his face is admissible evidence.  *See* Fed. R. Civ. P. 56(c)(4).  While there are certain circumstances where testimony may be so self-serving that the testimony cannot defeat summary judgment, such circumstances are not present here.  *See Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Here, Plaintiff provides detailed facts regarding the alleged incident.  That his testimony is also self-serving is to be expected since it is offered in support of his claims. *See Shumway*, 199 F.3d at 1104 (Defendant's "affidavit was of course 'self-serving,' . . .

[a]nd properly so, because otherwise there would be no point in submitting it."); *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (same).

Viewed in the light most favorable to Plaintiff and taking Plaintiff's facts as true, a jury could conclude that Cooning intentionally delivering a knee strike to Plaintiff's face while Plaintiff was restrained by other officers and not resisting was "objectively unreasonable" in light of the facts and circumstances confronting him.[3]   Accordingly, there are disputed issues of material fact precluding summary judgment, and summary judgment will be denied.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 83).

(2)     Defendant's Motion for Summary Judgment (Doc. 83) is **denied**.

(3)     This case is referred by random lot to United States Magistrate Judge **Bridget S. Bade** for the purpose of conducting a settlement conference.

(4)     Defense Counsel shall arrange for the relevant parties to jointly call the chambers of the **Honorable Bridget S. Bade at (602) 322-7680** within fourteen (14) days to schedule a date for the settlement conference.

Dated this 28th day of November, 2018.


Honorable Steven P. Logan
United States District Judge

---

[3] The Court has reviewed the videos provided by the Parties, but cannot resolve the credibility dispute at issue based on the content of the videos.